1
2
3
4
5
6
7 **UNITED STATES DISTRICT COURT**
8 **SOUTHERN DISTRICT OF CALIFORNIA**

9 UNITED STATES OF AMERICA,        CASE NO. 14CR629 WQH

10                      Plaintiff,     ORDER

          vs.
11 JAIME JIMENEZ (2),

12                      Defendant.

13 HAYES, Judge:

14        The matter before the Court is the motion to suppress  (ECF No. 37) filed by the

15 Defendant Jaime Jimenez.

16                        **BACKGROUND FACTS**

17        On February 13, 2014, at approximately 12:50 p.m., Border Patrol Agent Edgar

18 Aguirre was performing his assigned duties.  The agent was walking along Old

19 Highway 80 near mile marker 33.5, near the town of Jacumba, California, located 29

20 miles east of the Tecate Port of Entry and approximately 100 yards north of the United

21 States/Mexico international border.  This area is commonly used by illegal aliens to

22 hide because the area is so close to the border and the area contains lot of brush.  Border

23 patrol agents patrol this area looking for signs of attempted illegal entries which occur

24 on a daily basis.  An unidentified man driving a Nissan Altima approached Agent

25 Aguirre.  The man informed Agent Aguirre that he had observed three individuals get

26 into a blue S-10 pickup truck approximately one-half mile west of the agent's current

27 location.   The man reported that the truck had some kind of wood in the bed and that

28 the truck continued traveling west after picking up the three individuals.  The agent

1   recalled that he had seen a blue Chevrolet S-10 pickup truck pass him a minute or two
2   earlier.

3       Agent Aguirre immediately put out a dispatch informing other agents in the area
4   that he had just talked to a citizen who said he saw possible illegal aliens jump into a
5   truck and gave a description of the truck as a blue small Chevy S-10 or similar type of
6   small work truck.  Agent Paul Metts, conducting watch operations west of Jacumba
7   utilizing high-powered binoculars, identified the vehicle heading west on old Highway
8   80 near mile marker 33.

9       After Agent Metts confirmed the location of the pickup truck, Agent Mitchell
10  Stroud saw the vehicle approach his location.  Agent Stroud observed the vehicle, a blue
11  Chevrolet S-10 pickup truck pass his location with two individuals in the front seat.
12  Agent Stroud driving a fully marked U.S. Border Patrol vehicle pulled in behind the
13  blue pickup truck, followed it for a short time, and turned on his lights and sirens.  The
14  blue pickup truck continued traveling at the same pace westbound until the blue pickup
15  truck caught up to a gold sedan and another border patrol agent traveling in front of the
16  blue pickup truck.  The blue pick-up truck then crossed over the double yellow line to
17  go around two cars in front of it.  Agent Stroud continued in pursuit.  The next time that
18  agent Stroud saw the blue pick up it had hit an embankment, and pulled over.  Everyone
19  in the vehicle had fled on foot.

20      On March 12, 2014, the grand jury returned an indictment charging Defendants
21  Brigido Rameriz-Torres and Jaime Jimenez with three counts of transporting illegal
22  aliens within the United States in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (v)(II).

23                      **CONTENTIONS OF PARTIES**

24      Defendant moves to suppress statements and evidence on the grounds that the
25  vehicle stop and seizure was illegal.  Defendant asserts that his Fourth Amendment
26  rights were violated when border patrol agents attempted to stop the vehicle in which
27  he was a passenger.  Defendant contends that the border patrol agents lacked specific
28  articulable facts to form a reasonable suspicion to stop and seize the vehicle.  Defendant

1  contends that all evidence derived from the illegal stop and seizure must be suppressed.

2      The Government contends that the circumstances of the stop along with training

3  and experience of the agents lead them to a reasonable suspicion that the vehicle may

4  contain illegal immigrants.  The Government contends that the anonymous tip was

5  sufficient to create a particularized and objective basis to conduct an investigatory stop

6  of the vehicle.  The Government further contends that the flight of the vehicle created

7  reasonable suspicion for the stop and seizure, even if the anonymous tip was not

8  sufficient.  The Government asserts that the Defendant was not seized for Fourth

9  Amendment purposes at the attempted stop and that the flight from law enforcement

10  created a basis for reasonable suspicion to seize the Defendant.

11                          **APPLICABLE LAW**

12      Border patrol agents have the authority to stop automobiles in areas near the

13  Mexican border to question the occupants about their citizenship and immigration status

14  upon "reasonable suspicion."  *United States v. Brignoni-Ponce*, 422 U.S. 873, 882

15  (1975).  "While 'reasonable suspicion' is a less demanding standard than probable

16  cause and requires considerably less than preponderance of the evidence, the Fourth

17  Amendment requires at least a minimal level of objective justification for making the

18  stop."  *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).

19      Reasonable suspicion requires the agents making the stop be "aware of specific,

20  articulable facts which, when considered with objective and reasonable inferences, form

21  the basis for particularized suspicion."  *United States v. Montero-Camargo*, 208 F.3d

22  1122, 1129 (9th Cir. 2000) (en banc).  In the context of Border Patrol searches, the

23  factors to be considered in determining whether "reasonable suspicion" exists to justify

24  stopping a vehicle include, but are not limited to: 1) characteristics of the area; 2)

25  proximity to the border; 3) usual patterns of traffic and time of day; 4) previous alien

26  or drug smuggling in the area; 5) behavior of the driver, including obvious attempts to

27  evade officers; 6) appearance or behavior of passengers; 7) model and appearance of

28  the vehicle; and 8) officer experience. *United States v. Garcia-Barron*, 116 F.3d 1305,

1  1307 (9th Cir. 1997).

2  In this case, there is evidence that the area within 100 yards of the United
3  States/Mexico border in which the encounter took place was commonly used by aliens
4  to enter the United States illegally.  The information received by Agent Aguirre from
5  an unknown man stating that he had observed three individuals get into a blue Chevrolet
6  S-10 pickup truck after the truck had pulled off of Old Hwy 80 would infer suspicion
7  of illegal activities but may also be subject to an innocent explanation.  Assuming the
8  illegality of the initial attempted stop, the issue relevant to suppression is  whether "the
9  evidence to which instant objection is made has been come at by exploitation of that
10 illegality or instead by means sufficiently distinguishable to be purged of the primary
11 taint." *Wong Song v. United States*, 371 U.S. 471, 488 (1963).

12 In *United States v. Garcia*, 516 F.3d 318 (9th Cir. 1975), the defendant
13 approached a highway checkpoint, failed to slow down, and fled when directed to
14 secondary.  The Court of Appeals assumed the illegality of the checkpoint stop but
15 refused to suppress the marijuana later found in defendant's trunk.  The Court of
16 Appeals concluded that the illegality of the checkpoint stop did not taint the subsequent
17 arrest and the ensuing search.  The Court of Appeals explained:

18 Where a suspect's act is the intended result of illegal police conduct, or
   ensuing police action, it is likely to prove tainted. ... But where the illegal
19 conduct of the police is only a necessary condition leading up to the
   suspect's act, no taint attaches to his conduct; a "but-for" connection alone
20 is insufficient. In this case, the illegal stop was no more than part of a
   series of facts leading up to the subsequent flight. By ordering
21 Martinez-Lopez to stop, the officer could hardly have intended him to flee.

22 *Id*. at 319-320 (citations omitted).

23 In *United States v. Smith*, 633 F.3d 889 (9th Cir. 2011), an officer attempted to
24 stop Smith as he crossed the street in front of the officer's patrol car.  The officer
25 activated his patrol car siren twice, pulled his car to the curb, exited the vehicle, and
26 called to Smith.  Smith turned toward the officer and the officer repeated the command
27 to come stand in front of the car.  Smith turned and ran.  When Smith tripped, the
28 officer placed him in handcuffs, searched him for weapons, and recovered a handgun

1   from his person.  Smith moved to suppress the firearm.  Smith asserted that his Fourth

2   Amendment rights were violated because the officer did not have reasonable suspicion

3   when he first attempted to stop him.  The district court agreed that the officer did not

4   have reasonable suspicion to seize Smith before Smith fled from the officer but held

5   that Smith's Fourth Amendment rights were not violated by the attempted stop because

6   Smith was not seized for Fourth Amendment purposed until after he fled.  The district

7   court concluded that the flight created reasonable suspicion and that the pursuit,

8   detention and pat down search of Smith did not violate Smith's Fourth Amendment

9   rights.  The Court of Appeals stated:

> We agree with the district court that Smith was not seized during his initial encounter with Officer Dominguez.  Because Smith was not then seized, we need not decide whether the officer had reasonable suspicion justifying a Terry stop before Smith fled.  Smith's Fourth Amendment rights were not violated by the attempted stop, even if the officer did not have reasonable suspicion, because the attempted stop was not a seizure for Fourth Amendment purposes.
>
> Smith claims that he was seized when he paused momentarily, turned to and moved toward Officer Dominguez, and engaged in a short verbal exchange.  However, a person is not "seized" within the meaning of the Fourth Amendment unless "by means of physical force or show of authority, his freedom of movement is restrained." *United States v. Mendenhall*, 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). ...
>
> In this case, where the officer did not use physical force during the initial encounter, the question is whether Smith's actions constituted submission to Officer Dominguez's show of authority. The Supreme Court has held that a seizure does not occur where the subject does not yield.  *Hodari D.*, 499 U.S. at 626, 111 S.Ct. 1547.  "[A] policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee ... is no seizure." *Id*.  By his own testimony, Smith did not yield to the officer's commands. Smith turned toward the officer, asked some questions, took a few steps towards the patrol car, but then backed away. Smith asked if he was under arrest, and Officer Dominguez told him "no."  When the officer continued to issue commands, Smith turned and ran.  Like the suspect in *Hodari D.* who "was not seized until he was tackled," Smith was not seized when he initially hesitated and engaged in a short verbal exchange with Officer Dominguez.  *Id*. at 629, 111 S.Ct. 1547.

*Id*. at 892-93 (citations omitted).

## RULING OF THE COURT

Defendant contends that "[a] seizure occurred because a reasonable  person would not feel free to ignore being chased by a Border Patrol vehicle with its

emergency lights activated.... Defendant agrees that there was reasonable suspicion after the driver began to drive erratically and the occupants fled into the hills.  But before the truck began to flee there was no reasonable suspicion to justify the activation of the emergency lights." (ECF No. 59 at 2-3).  The Government contends that Defendant was not seized for Fourth Amendment purposes when the border patrol agent activated his lights and siren in an attempt to stop him.  The Government asserts that the facts and circumstances, including Defendant's flight from law enforcement, created reasonable suspicion to believe that Defendant was engaged in illegal activity at the time of his seizure.

In this case, the Agent Stroud activated his lights and siren and followed the vehicle in which Defendant was traveling.  There was no seizure by means of physical force or submission of authority at the attempted stop.  *See Smith,* 633 F.3d at 893.  ("In the absence of physical force, in order to constitute a seizure, an officer's show of authority must be accompanied by submission to the assertion of authority." (internal quotations omitted)).  The driver of the vehicle began to drive erratically and to attempt to flee.  The facts surrounding the initial stop along with the driver's attempt to flee were sufficient to form a reasonable suspicion to seize the Defendant and the others in fleeing the vehicle and to investigate suspected criminal activity.  *See Illinois v. Wardlow*, 528 U.S. 119, 125 (2000) ("Headlong flight – wherever it occurs – is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such.").

There are no facts which would support the conclusion that the initial attempted stop of the pick up truck was a seizure for Fourth Amendment purposes.  Defendant's Fourth Amendment rights were not violated by the attempted stop (the activation of the lights and siren) because Defendant was not seized for Fourth Amendment purposes until after the driver attempted to flee and the Defendant subsequently fled from the vehicle.

1          IT IS HEREBY ORDERED that the motion to suppress filed by the Defendant

2     Jaime Jimenez (ECF No. 37) is denied.

3     DATED:  July 22, 2014

4                                                          *William Q. Hayes*

                                  **WILLIAM Q. HAYES**

5                                       United States District Judge

14CR629 WQH